# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **DOUGLAS D. LEGG,** | ) |
| **Claimant,** | ) |
| vs. | ) Case No. CV-09-S-1286-NE |
| **MICHAEL J. ASTRUE, Commissioner, Social Security Administration,** | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Claimant, Douglas Legg, commenced this action on June 26, 2009, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability, disability insurance, and supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly evaluated the medical evidence from both treating and examining physicians, that he improperly applied the Eleventh Circuit's standard for evaluating complaints of pain and other subjective symptoms, and that he improperly evaluated claimant's credibility. Upon review of the record, the court concludes that these contentions lack merit, and that the Commissioner's ruling is due to be affirmed.

**A.    Medical Evidence**

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(e).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate:  the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(d). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. George Kouns, claimant's treating D.O., completed a Physical Capacities Evaluation form on March 17, 2007.  He stated that claimant could lift twenty pounds occasionally and ten pounds frequently.  He could sit for a total of six hours, and stand and walk (combined) for a total of two hours, during an eight-hour workday. He would be restricted as to pulling and pushing movements with his arms and legs, climbing and balancing, gross manipulation, bending, and stooping, all due to his back pain. Dr. Kouns also completed a "Clinical Assessment of Pain" form on the same date.  He indicated that pain would be present to such an extent as to be distracting to adequate performance of daily activities or work; that physical activity

(such as walking, standing, bending, stooping, and moving of extremities) would greatly increase pain to such a degree as to cause distraction from or total abandonment of tasks; and that the side effects of claimant's prescription medications could be expected to be severe and to limit his effectiveness due to distraction, inattention, and drowsiness. Dr. Kouns also stated that claimant has an underlying medical condition consistent with the pain he experiences.[1]

The ALJ assigned little weight to Dr. Kouns' opinion, stating that there is "little or nothing in his records which would justify his limitations and pain assessments."[2] Stated differently, the ALJ found that Dr. Kouns' assessment was inconsistent with his own medical records. That conclusion was in accordance with applicable law, *see Phillips*, 357 F.3d at 1240-41, and it also was supported by substantial evidence of record. Thus, the court concludes that the ALJ properly considered Dr. Kouns' opinion.

Dr. Frank J. Nuckols, the state agency psychiatrist, completed a mental residual functional capacity assessment form on October 19, 2005. Dr. Nuckols indicated that claimant had no more than moderate limitations in any area of mental functioning. At the end of the assessment form, Dr. Nuckols offered the following narrative:

> A: Claimant would be expected to understand, remember, and

---

[1]Tr. at 195-97.
[2]Tr. at 21.

carry out short simple instructions and tasks but would likely have difficulty with more detailed tasks and instructions.

B: Claimant would likely have trouble carrying out more detailed tasks and instructions. Claimant would be expected to maintain attention and concentration for 2 hours with all customary rest breaks. A well-spaced work environment would be best for maximum concentration. Claimant would likely miss 1-2 days/ month due to psych symptoms.

C: Contact with the public should be infrequent and non-intensive. Supervision should be tactful, constructive and non-threatening.

D: Changes in the workplace should be infrequent and gradually introduced.[3]

The ALJ afforded little weight to Dr. Nuckols' opinion, because he

> neither treated nor examined the claimant, and he did not have the benefit of seeing the claimant and listening to his testimony at the hearing. Also, he did not have benefit of additional evidence which was submitted later. His opinion is not consistent with a preponderance of the evidence as a whole.[4]

Claimant first argues that the ALJ's assessment of Dr. Nuckols' opinion was erroneous because the ALJ gave Dr. Nuckols' opinion less weight than he gave the opinions of Dr. Boll and Dr. Arnold. Dr. Thomas Boll, Ph.D., a neuropsychologist, conducted a consultative examination on October 3, 2005. Dr. Boll did not complete a functional capacities form, but the notes of his clinical examination reveal that

---

[3]Tr. at 163-65.
[4]Tr. at 21.

5

claimant was "quite capable of providing an adequate history and was perfectly intelligible." Claimant reported to Dr. Boll that he could not read, but Dr. Boll indicated that claimant did have a commercial driver's license and worked successfully as a mechanic and a truck driver for many years, which would "contraindicate a diagnosis of mental retardation." Dr. Boll reported that claimant's language skills were normal, and his "mental status was full." Dr. Boll administered the Wechsler Adult Intelligence Scale-III ("WAIS-III") examination, on which claimant obtained a verbal IQ score of 71, a performance IQ score of 81, and a full scale IQ score of 74. Claimant's thought processes, thought content, affect, and mood all were normal. Dr. Boll assessed claimant with "borderline mental functioning," but otherwise found no noteworthy mental impressions.[5] Dr. Mary Arnold, Psy.D., a licensed psychologist, conducted a consultative examination on April 21, 2008. Dr. Arnold also administered the WAIS-III exam and found verbal and performance IQ scores of 79, and a full scale IQ score of 77, all of which fall within the borderline range.[6] The ALJ found the opinions of Drs. Boll and Arnold "to be consistent with the record as a whole. The opinions were based upon thorough examinations of the claimant. The undersigned finds no substantive evidence inconsistent with the

---

[5] Tr. at 160-62.
[6] Tr. at 200.

assessment of Drs. Boll and Arnold, and therefore, assigns them significant weight."[7]

The ALJ did not err in assigning greater weight to the opinions of Dr. Boll and Dr. Arnold than he assigned to the opinion of Dr. Nuckols. The ALJ properly considered the factors set forth in the regulations for evaluating medical evidence — including the relationship between claimant and the consultative examiners and the extent to which their respective opinions were supported by the record as a whole — and his findings were supported by substantial evidence. *See* 20 C.F.R. § 404.1527(d).

Claimant also argues that the ALJ erred in evaluating claimant's mental impairments because he did not properly apply 20 C.F.R. §§ 404.1520a and 416.920a. It is true that

> [a]gency regulations require the ALJ to use the "special technique" dictated by the PRTF for evaluating mental impairments. 20 C.F.R. § 404.1520a-(a). This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a-(c)(3-4). The ALJ is required to incorporate the results of this technique into the findings and conclusions. 20 C.F.R. § 404.1520a-(e)(2).

*Moore v. Barnhart,* 405 F.3d 1208, 1213-14 (11th Cir. 2005). An ALJ's failure to complete this analysis is not harmless error. *Id.* at 1214. Contrary to claimant's assertion, however, the ALJ did consider these factors in his second administrative

---

[7]Tr. at 21.

decision.  The ALJ found that claimant's mental impairment "results in mild restrictions of activities of daily living, moderate difficulties maintaining social functioning, moderate difficulties with concentration, persistence and pace.  There is no evidence that his mental impairment has resulted in any extended episodes of deterioration or decompensation."[8]

## B.   Subjective Symptoms and Credibility

To demonstrate that pain or another subjective symptom renders him disabled, a claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  If an ALJ discredits subjective testimony of pain, "he must articulate explicit and adequate reasons."  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

The ALJ in the present case properly applied these legal principles.  He found that claimant's medically determinable impairments — including borderline intellectual functioning, low back pain, left hip pain, and neck pain — could

---

[8]Tr. at 19.

reasonably be expected to produce the symptoms he alleged, but that claimant's statements concerning the intensity, persistence and limiting effects of his symptoms were not fully credible.[9]  Contrary to claimant's assertion, the ALJ is allowed to evaluate a claimant's credibility *after* determining that the claimant has a medical condition or conditions that reasonably could be expected to give rise to the level of pain alleged by the claimant.  *See Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) ("*After* considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)) (emphasis supplied).

Furthermore, the ALJ's determination regarding claimant's credibility was supported by substantial evidence of record.  The ALJ did not suggest, as claimant would have the court believe, that claimant's sporadic, part-time work activity after his alleged onset date constituted substantial gainful activity. Instead, the ALJ merely noted that claimant's work history reflected an activity level that, *at least at times*, was greater than what he reported to various sources during the administrative process.  The court agrees with claimant that the ALJ misstated the medical evidence in one respect.  The ALJ stated that "Dr. Boll noted that the side effects from medications are mild, and would not interfere with the claimant's ability to perform

---

[9]Tr. at 20.

work activities in any significant manner."[10] A complete review of Dr. Boll's report reveals that Dr. Boll never made any such statement.[11] Even so, the ALJ's factual error does not constitute grounds for reversal of his decision, because other evidence supports the ALJ's credibility determination. For example, the ALJ found that claimant's complaints of pain were not consistent with clinical examination findings or objective medical test results. The record supports that conclusion.

**C.   Conclusion**

Consistent with the foregoing, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 20th day of April, 2010.

_____
United States District Judge

---

[10]Tr. at 20.
[11]*See* Tr. at 160-62.